UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
NATALIA AKAYA KRYSTAL JOSEPH,

|  |  |
|---|---|
|  | **REPORT AND RECOMMENDATION** |
| Plaintiff, | CV 25–05411 (NCM)(AYS) |

-against-

ANTHONY PETER RODRIGUEZ,

Defendant.
-----------------------------------------------------X
**SHIELDS, Magistrate Judge,**

Plaintiff Natalia Akaya Krystal Jospeh ("Jospeh" or "Plaintiff), a lawful permanent resident of the United States, brought this action against Anthony Peter Rodriguez ("Rodriguez" or "Defendant"), the sponsor of her U.S. Citizenship and Immigration Services Form I-130, Petition for Alien Relative ("Visa Petition"). Plaintiff seeks to enforce defendant's financial support obligations under the U.S. Citizenship and Immigration Services (USCIS") Form I-864, Affidavit of Support Under Section 213A of the Immigration and Nationality Act ("INA").

For the reasons below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in its entirety.

BACKGROUND

I.      Facts

    A.      The Complaint

The pertinent facts are drawn from the uncontested allegations in Plaintiffs' complaint, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace

Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

Plaintiff is a citizen of St. Lucia and lawful permanent resident of the United States. (Compl., DE [1], ¶ 1.) Plaintiff resides in Albany, New York. (Id.) Defendant is a U.S. citizen and is Plaintiff's former spouse, and lives in Hempstead, New York. (Id. ¶ 2.) Plaintiff and Defendant were married on October 2, 2017 in Bridgeport, Connecticut. (Id. ¶ 6.) Immediately thereafter, Defendant retained an immigration attorney and began the process of securing status as a lawful permanent resident ("Resident/Residency") for Plaintiff. (Id. ¶¶ 7-8.) Specifically, on November 7, 2017, Defendants signed a USCIS Form I-130, Petition for Alien Relative, which listed Plaintiff as the beneficiary. (Id. ¶ 8.)

Plaintiff applied for an immigrant visa to the United States on the strength of Defendant's petition. (Id. ¶ 10.) Defendant signed a Form I-864 (the "Affidavit of Support") in support of Plaintiff's visa application. (Id. ¶¶ 10-11.) When he signed the Affidavit of Support, Defendant agreed to provide Plaintiff the support necessary to maintain her income at 125 percent of the federal poverty line. (Id. ¶ 12; see Affidavit of Support ("Aff. of Supp."), DE [1-1] at 4 ("If an intending immigrant becomes a lawful permanent resident ... based on a Form I-864 that you have signed ... you must ... [p]rovide the intending immigrant any support necessary to maintain him or her at an income that is at least 125 percent of the Federal Poverty Guidelines for his or her household size ....").)

On May 15, 2018, Plaintiff's residency application was approved which triggered Defendant's obligations under the Affidavit of Support. (Compl. ¶¶ 15-16.)

In October 2019, the couple separated, and Defendant filed for divorce. (Compl. ¶ 18.)

Initially, the parties entered a stipulation whereby Defendant would pay $12,000 in spousal maintenance. (Compl. ¶ 19, see Compl., Ex. 4 Stipulation, DE [1-4].) Defendant later disputed the agreement, and the divorce proceeded to trial. (Compl. ¶ 19.)

At the divorce trial, Plaintiff asserted that the Court should enforce defendant's obligations under the Affidavit of Support. (Compl. ¶ 20.) The divorce tribunal, however, found that Plaintiff had not adequately demonstrated her income, leaving unclear what liability Defendant has under the Affidavit of Support. (Id. ¶ 20; see Compl., Ex. 5 Decision After Trial, DE [1-5] at p. 4.) The Court ruled that Plaintiff could later "seek a specific amount from the Husband in any federal or state court, as outlined above, with proper proof," (Id.) The Court awarded no spousal maintenance to Plaintiff. (Compl. ¶ 20.)

A Judgment of Divorce was entered on March 25, 2022, incorporating by reference the Court's prior decision. (Compl. ¶ 21; Compl., Ex. 6 Divorce Judgment, DE [1-6].) On July 17, 2023, the divorce Court entered an Amended Judgment, enforcing the terms of the parties' 2019 stipulation and ordering Defendant to pay Plaintiff $12,000 in spousal maintenance. (Compl. ¶ 22; Compl., Ex. 7 Amended Judgment, DE [1-7].)

Following the separation, Plaintiff has struggled financially. (Compl. ¶ 24.) The sole financial assistance that Defendant has provided Plaintiff since the separation is the $12,000 spousal maintenance. (Id. ¶ 26.) Since the separation, Defendant has not provided financial support to Plaintiff per his legal obligation under the Affidavit of Support. (Id. ¶ 25.) In 2025, Plaintiff was able to secure employment that earned income slightly in excess of 125 percent of the poverty line and does not claim entitlement to support for 2025.

B.      Procedural History

Plaintiff commenced this action on September 26, 2025. (See generally Compl.) Plaintiff properly served the summons and complaint on Defendant by personally serving Defendant at his residence on October 11, 2025. (DE [7], Proof of Service.) When Defendant failed to respond to the complaint, Plaintiff requested, and the Clerk of Court entered a certificate of Defendant's default pursuant to Federal Rule of Civil Procedure 55(a) on November 24, 2025. (DE [8], Request for Certificate of Default on 11/04/2025; DE [9], Entry of Default.) On January 7, 2026, Plaintiff moved for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b). (DE [10], Motion for Default Judgment ("Mot").) Plaintiff served Defendant as required by Local Civil Rule 55.2(c). (DE [10-2], Certificate of Service.) On January 8, 2026, the motion was referred to the undersigned for a report and recommendation. (See Order Referring Motion dated 01/08/2026.)

DISCUSSION

I.    Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. See Shariff v. Beach 90th St. Realty Corp., No. 11-CV2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).

A.  Jurisdiction and Venue

4

A court must have both subject matter and personal jurisdiction before it can enter default judgment against a defaulting party, and venue must be proper. See, e.g., FDI Cap., LLC v. Petrogas Field Servs., 1:22CV1012, 2023 WL 6192770, at *2 (E.D. Va. Feb. 17, 2023), report and recommendation adopted, 2023 WL 3069391 (E.D. Va. Mar. 15, 2023). Plaintiff's action arises under the INA, 8 U.S.C. §§ 1101 et seq. Thus, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. With respect to personal jurisdiction, the undersigned finds that Defendant submitted to the jurisdiction of any court with subject matter jurisdiction over Plaintiff's claims when Defendant signed the Affidavit of Support of Plaintiff's visa application. See 8 U.S.C. § 1183a(a)(1)(C) ("No affidavit of support may be accepted ... unless such affidavit is executed by a sponsor of the alien as a contract ... in which the sponsor agrees to submit to the jurisdiction of any Federal or State court for the purpose of actions brought under subsection (b)(2)."). Finally, the undersigned finds that venue is proper because Defendant's alleged breach of contract substantially occurred in this District. 28 U.S.C. § 1391(b)(2).

B.  Grounds For Default Judgment

The Clerk entered a default against Defendant on November 24, 2025. (DE [9].) The Court first considers whether Plaintiff has submitted sufficient facts for the Court to find that Defendant's conduct warrants entry of default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Mason

Tenders Dist. Council v. Duce Constr. Corp., No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by Defendant to respond to the Complaint demonstrates the default was willful. See, e.g., Indymac Bank v. Nat'l Settlement Agency, Inc., No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). Defendant had sufficient notice of the present litigation because he was properly served with a summons and Complaint, which was personally served upon him at his residence on October 11, 2025. (DE [6].) The motion for default judgment and supporting papers were also served via mail. (DE [10-2].)

Notwithstanding this notice and service, Defendant did not respond to the Complaint, did not appear, and has not in any way attempted to defend himself before this Court, thus constituting willfulness in the context of default judgment. See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc., No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to the allegations because Defendant did not appear and did not assert or present evidence of any defense. "[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. If a defendant presents no defense to the court,

the allegations in the complaint are deemed admitted." Id. (quotations and citations omitted); see, e.g., Indymac Bank, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether ... defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

Third, Plaintiff would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), report and recommendation adopted, Dkt. No. 18 (Jan. 26, 2009); see also Sola Franchise Corp., 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors establish grounds for entry of a default judgment. The Court now turns to the damages sought and other relief to be awarded in such a judgment.

II.     Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d. Cir. 1992); Morales v. B&M Gen. Renovation Inc., No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), report and recommendation adopted, 2016 WL 1258482 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." LaBarbera v. ASTC Labs. Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted).

A.      Background on USCIS Form I-864

The INA prohibits the entry of immigrants deemed "likely to become a public charge." 8 U.S.C. § 1183a(a)(1). In virtually all family-sponsored immigration matters, an intending immigrant is required to submit a Form I-864 to overcome public charge inadmissibility. By executing a Form I-864, the sponsor agrees to prevent the immigrant's receipt of means-tested public benefits. Specifically, the sponsor agrees to provide the immigrant with any support necessary to maintain her at an income that is at least 125 percent of the federal poverty line for her household size. 8 U.S.C. § 1183a(a)(1)(B). Once executed, a Form I-864 is a legally enforceable contract between the sponsor and sponsored immigrant. Al-Aromah v. Tomaszewicz, No. 7:19-CV-294, 2019 WL 4306970, at *2 (W.D. Va. Sept. 11, 2019) (citing Younis v. Farooqi, 597 F. Supp. 2d 552, 554–55 (D. Md. 2009)); see also 8 U.S.C. § 1183a(a)(1)(B) ("No affidavit of support may be accepted ... unless such affidavit is executed by a sponsor of the alien as a contract ... that is legally enforceable against the sponsor by the sponsored alien, the Federal Government, any State ..., or by any other entity that provides any means-tested public benefit ....").

B.      Plaintiff's Rights to Financial Support Under USCIS Form I-864

Plaintiff's breach of contract claim is predicated on her allegation that her income fell below 125 percent of the Federal Poverty Guidelines, thus triggering Defendant's financial support obligations. Accordingly, to enforce her rights to financial support under the Affidavit of Support, Plaintiff must establish the following: (1) that Defendant "executed" the Affidavit, see 8 C.F.R. § 213a.2(a)(1)(ii); (2) that Plaintiff subsequently acquired residency in the United States through a visa application that included the Affidavit, see id. § 213a.2(d); (3) that the Affidavit has not been terminated due to the occurrence of a terminating event, see id. § 213a.2(e)(2)(i);

and (4) that Plaintiff's income fell below 125 percent of the Federal Poverty Guidelines, see 8 U.S.C. § 1183a(a)(1)(A). The undersigned addresses each of these requirements in turn.

  1.  <u>Defendant Executed the Affidavit of Support</u>

Under the implementing regulations for the INA, "an affidavit of support is executed when a sponsor signs and submits the appropriate forms in accordance with the form instructions to USCIS or the Department of State, as appropriate." 8 C.F.R. § 213a.2(a)(1)(ii). The Complaint alleges that Defendant signed the Affidavit of Support on November 7, 2017 and filed the Affidavit in support of Plaintiff's visa application, and that Plaintiff's application was submitted to (and ultimately approved by) the U.S. State Department. (Compl. ¶¶ 10-16; see also Aff. of Supp., DE [1-1].) Accordingly, this Court finds that the Affidavit of Support was executed and thus is an enforceable contract.

  2.  <u>Plaintiff Acquired U.S. Residency</u>

With respect to any intending immigrant, a sponsor's support obligations under an affidavit of support "begin when the immigration officer or the immigration judge grants the intending immigrant's application for admission as an immigrant ... on the basis of an application for admission ... that included the affidavit of support ...." 8 C.F.R. § 213a.2(e)(1). On May 15, 2018, the U.S. State Department approved Plaintiff's Residency application, which incorporated Defendant's Affidavit. (Compl. ¶ 15.) Plaintiff has held lawful permanent resident status since May 15, 2018 (Id. ¶ 15) Theus, this Court recommends that Defendant's support obligations under the Affidavit of Support commenced when Plaintiff obtained status as a lawful permanent resident.

  3.  <u>No Terminating Event Has Occurred</u>

A sponsor's support obligations terminate by operation of law when the sponsored immigrant: (1) becomes a U.S. citizen; (2) has worked, or can be credited with, 40 qualifying quarters of coverage under the Social Security Act; (3) loses lawful permanent resident status and departs the United States; (4) obtains in a removal proceeding a new grant of adjustment of status as relief from removal; or (5) dies. 8 C.F.R. § 213a.2(e)(2)(i). Here, none of the five terminating events have occurred. First, Plaintiff is not a U.S. citizen. (Compl. ¶ 1.) Second, Plaintiff cannot be credited with 40 quarters of work (i.e., 10 years) under the Social Security Act because she was only granted status as a lawful permanent resident in 2018. (Id. ¶ 15.) Third, Plaintiff is a lawful permanent resident, and, in any event, she has not departed the United States. (Id. ¶ 15.) Fourth, Plaintiff is not currently in removal proceedings and has not been granted an adjustment of status as relief from removal. (Id. ¶ 17.) Fifth, and finally, Plaintiff is still alive. (Id. ¶¶ 1, 17.) Moreover, as stated in the Form I-864, "divorce does not terminate [the sponsor's] obligations under this Form I-864." (See Aff. of Supp., DE [1-1], at 5.) The Court thus recommends that Defendant's support obligations under the Affidavit of Support have not been terminated.

4.      Plaintiff's Income Fell Below 125 Percent of the Federal Poverty Guidelines

By signing a Form I-864, a sponsor agrees to maintain the sponsored immigrant's income at a level equal to 125 percent of the Federal Poverty Guidelines. 8 U.S.C. § 1183a(a)(1)(A). Plaintiff alleges that from 2020 – 2024, her income was beneath 125% of the poverty line for her household size of one. (Compl. ¶¶ 24, 28; see also Compl. Ex. 3, DE [1-3].) Plaintiff further alleges that Defendant has failed to provide her with the financial support required by the Affidavit of Support. (See, e.g., id. ¶ 32.) The Court respectfully recommends that by failing to provide the requisite financial support, Defendant has breached his contract with Plaintiff, and that Plaintiff is entitled to redress, including damages under the Affidavit of Support.

10

III.     Requested Relief

In her Motion for Default Judgment, Plaintiff requests a damages award as well as attorneys' fees and costs. (DE [10-1].) The Court addresses each form of requested relief in turn.

A.     Damages

Once liability is established, the court must ascertain damages with "reasonable certainty." Hosking v. New World Mortg., Inc., 570 Fed. App'x 28, 31 (2d Cir. 2014).

As discussed above, by signing a Form I-864, a sponsor agrees to maintain the sponsored immigrant's income at a level equal to 125 percent of the Federal Poverty Guidelines. 8 U.S.C. § 1183a(a)(1)(A). The Form I-864 permits recovery of "damages that would put plaintiff in as good a position as she would have been had the contract been performed." Younis v. Farooqi, 597 F. Supp. 2d 552, 554 (D. Md. 2009) (quoting Shumye v. Felleke, 555 F. Supp. 2d 1020, 1024 (N.D. Cal. 2008)). Damages are calculated on a per annum basis, rather than aggregated across all calendar years at issue. See 8 U.S.C. § 1183(a)(1)(A) (requiring the sponsor to maintain the sponsored immigrant's "annual income" at the specified level); see also Younis, 597 F. Supp. 554 ("To determine the appropriate damages, courts compare the plaintiff's annual income for the particular years at issue, rather than the aggregate income for the entire period, against the 125% poverty threshold for each particular year."). Accordingly, an appropriate measure of damages is the difference between the sponsored immigrant's annual income and 125 percent of the Federal Poverty Guidelines for each year during the time period in question. As used in the pertinent regulations, "income" means the sponsored immigrant's federally taxable income. See 8 C.F.R. § 213a.1 (defining "income"); see also Flores v. Flores, 590 F. Supp. 3d 1373, 1382 (W.D. Wash. 2022) (applying the definition of income set forth in 8 C.F.R. § 213a.1); Fukita v. Gist, 2021 WL 288121, at *5 (D. Minn. Jan. 28, 2021) (same).

11

Here, Plaintiff alleges that her income fell below 125 percent of the Federal Poverty Guidelines in 2020, 2021, 2022, 2023, and 2024. (Compl. ¶ 28.)  In her Motion for Default Judgment, Plaintiff requests $47,992 in damages. (DE [10-1].) Plaintiff's request for damages is supported by the below table, which compares Plaintiff's income against 125 percent of the Federal Poverty Guidelines for a household size of one.

| Year | Poverty Line (FPG) | 125% FPG | Income | Damages |
|---|---|---|---|---|
| 2020 | $12,760.00 | $15,950 | $2,910 | $13,040 |
| 2021 | $12,880.00 | $16,100 | $5,839 | $10,261 |
| 2022 | $13,590.00 | $16,988 | $320 | $16,668 |
| 2023 | $14,580.00 | $18,225 | $16,759 | $1,466 |
| 2024 | $15,060.00 | $18,825 | $12,268 | $6,557 |
| **Total** | | | | **$47,992** |

The Court find that Plaintiff's damages calculation is supported by the evidence presented and recommends that Plaintiff be awarded damages in the amount of $47,992.

B.      Attorneys' Fees and Costs

In her Complaint and motion for default judgment, Plaintiff also requests an award of all Plaintiff's attorney fees.  (Compl. at 9; Mot. at 9-11.)  Attorneys' fees may be recovered in an action for immigration spousal support. See 8 U.S.C. § 1183a(c) ("Remedies available to enforce an affidavit of support under this section include ... payment of legal fees and other costs of collection."); see also Flores v. Flores, No. 3:21-CV-05814-DGE, 2022 WL 3586871, at *1 (W.D. Wash. Aug. 22, 2022). Having found that Defendant's support obligations under the

Affidavits commenced when Plaintiff obtained status as a lawful permanent resident and that no terminating event has occurred, the undersigned further finds that Plaintiff is entitled to recover reasonable attorneys' fees and costs incurred in litigating this action.

The starting point of the attorney's fee calculation is the lodestar method, under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Wright v. Miah, No. 22-CV-4132, 2023 WL 6219435, at *14 (E.D.N.Y. Sept. 7, 2023), report and recommendation adopted, 2023 WL 6216541 (E.D.N.Y. Sept. 25, 2023) (citation omitted); see also Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011). The lodestar "'is essentially what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.'" Wright, 2023 WL 6219435, at *14 (quoting Streamlight, Inc. v. Gindi, No. 18-CV-987, 2019 WL 6733022, at *18 (E.D.N.Y. Oct. 1, 2019)).

To calculate attorney's fees, courts in the Second Circuit determine the reasonable hourly rate, defined as "the rate a paying client would be willing to pay[,]" and multiply that rate by the number of hours reasonably expended in prosecuting an action. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117–18 (2d Cir. 2007). To determine what a reasonable client would pay, courts consider the community in which the district court sits and look to the prevailing rates for attorneys in that field with comparable experience. See Gesualdi v. Bestech Transp., LLC, No. 14-cv-1110, 2022 WL 866853, at *2 (E.D.N.Y. Mar. 23, 2022) ("The reasonableness of hourly rates is guided by the market rate '[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, and the relevant community is generally the district in which the court sits.") (cleaned up); Rudler v. Houslanger & Assocs., PLLC, No. 18-cv-7068, 2020 WL 473619, at *2 (E.D.N.Y.

13

Jan. 29, 2020) ("This Court follows the Second Circuit's 'forum rule,' which 'generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable rate.'"). Presumptively reasonable hourly rates in this District are currently "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals." Rubin v. HSBC Bank USA, NA, 763 F. Supp. 3d 233, 244 (E.D.N.Y. 2025).

The fee applicant has the burden to establish the reasonableness of the requested hourly rates. Trs. of Metal Polishers Loc. 8A-28A Funds v. Legacy Restoration Metal Stone Wood, LLC, No. 24-CV-5192, 2025 WL 3461171, at *10 (E.D.N.Y. Aug. 29, 2025). Based on the billing records of Plaintiff's counsel, Gregory H. McLawsen ("McLawsen"), Plaintiff was billed at a rate of $700 per hour for 16.98 hours of work. (See DE [12-11], Ex. 11.)

McLawsen is managing attorney of the Seattle, Washington based law firm, Sound Immigration. (DE [12-9], Ex. 9.) McLawsen has over fifteen years of experience representing clients in immigration litigation and is a 2009 University of Nebraska College of Law graduate. (Id.) To support the fee application, McLawsen provided declarations from prominent immigration lawyers. (See Ex. 10, DE [12-10].) The declarations all unanimously agree that an hourly fee of $600 is reasonable given Mclawsen's level of expertise and specialization. (See id.)

The Court agrees with the declarations provided in support of the fee application, that an hourly fee of $600 is appropriate and reasonable. While Plaintiff seeks an hourly fee of $700, even given McLawsen's extensive experience and background in this area of law, his hourly rate of $700 is unreasonable compared to the $450 to $650 range for partners in this District. Accordingly, the Court recommends that McLawsen's hourly fee be reduced to $600 to reflect

14

his extensive experience while also staying in line with the high-end of reasonable fees in this District.

Plaintiff's counsel billed for 16.98 hours of legal services, all of which were related to this case, securing an entry of default, drafting Plaintiff's' pleadings and the instant Motion, and preparing correspondence to Plaintiff and Defendant. (Ex. 11, DE [12-11].) Reviewing these billing records, the Court finds that this billing was "reasonable and not excessive, redundant, or unnecessary." Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp., No. 24-CV-6634, 2025 WL 3265230, at *10 (E.D.N.Y. Nov. 24, 2025). Therefore, the Court respectfully recommends awarding Plaintiff attorneys' fees at $600 per hour for 16.98 hours of work, totaling an award of $10,188 in attorneys' fees.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for default judgment, found at docket entry No. 10 herein, be granted in its entirety and Plaintiff be awarded:

(1) **$47,992** in damages; and

(2) **$10,188** in attorneys' fees.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Further, Plaintiff's counsel is directed to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant at his last known addresses and to file proof of service on ECF by June 8, 2026. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of

the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days may preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
June 3, 2026

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge

16